UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT E. BEECHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   No. 1:14-cv-01417-SEB-DKL |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Robert Beecher seeks judicial review of the decision of the Acting Commissioner of Social Security (Commissioner) denying his application for supplemental security income benefits. The Honorable Sarah Evans Barker, District Judge, designated this Magistrate Judge under Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1) to issue a report and recommendation on Plaintiff's request for review.

**I.   BACKGROUND**

**A.  Procedural History**

On June 9, 2011, Beecher applied for supplemental income disability benefits, alleging that he became disabled on January 1, 2001 because of hypertension, lymphoma, renal impairment, and a hernia. Admin. R. (hereinafter "R.") 117, 136. His application was denied initially and on reconsideration. The administrative law judge (ALJ) held a

hearing in October 2012 at which Beecher, who was represented by counsel, testified. R. 24–43. A vocational expert also testified at the hearing. The ALJ denied the claim in a written decision, and the Appeals Counsel denied review, making the ALJ's decision the final decision of the Commissioner. Beecher seeks judicial review under 42 U.S.C. § 405(g).

### B. Factual Background

Beecher was 52 years old at the time of the ALJ's decision. He stopped working in December 2009. His past relevant work was as an apartment maintenance supervisor. He is five feet ten inches tall, and in recent years his weight has ranged from 340 to 375 pounds, making him morbidly obese.

In addition to the impairments noted in his application for benefits, Beecher has several other impairments. He has a history of acute renal failure going back at least as early as 2001. He has had surgery to place stents in his ureters or kidneys and has had elevated creatinine levels. *See, e.g.*, R. 674, 725. He has been hospitalized on several occasions in connection to his renal failure and has been diagnosed with chronic renal insufficiency. He has had hydronephrosis and his left kidney no longer functions. He has received treatment for his chronic renal failure into 2012.

Beecher has been diagnosed with severe obstructive sleep apnea. A June 2012 sleep study supported this diagnosis. The physician from the IU Health Sleep Disorders Center recommended that Beecher use a CPAP machine and lose weight. R. 728–33. The

physician believed that Beecher's sleep apnea would respond "fairly well" to the CPAP machine.

Beecher also suffers from angina and obesity. R. 669–70. In January 2012, he was hospitalized for complaints of chest pain. R. 695. It was noted that he had hypertension, shortness of breath, and new onset of angina at rest. R. 696. However, a radiology report indicated no acute cardiopulmonary abnormality and that Beecher's heart size was within normal limits, *id.*; R. 710; Beecher was discharged the next day. A February 2012 ECG (Electrocardiogram) revealed no chest discomfort during the stress test, normal ST segment response to stress, some sinus arrhythmia and transient 2nd degree AV (atrioventricular) block. R. 707. Later in March 2012, Beecher had an abnormal ECG and 1st degree AV block. R. 711.

At the hearing before the ALJ, Beecher testified that his left kidney did not function, he had problems with his right kidney, his heart was enlarged, and he suffered from sleep apnea, chest pain, high blood pressure, and a hernia. R. 32–33, 37. (A January 28, 2012 radiology examination report, however, indicated that Beecher's heart size was "within normal limits." R. 710.) Beecher testified that his main problem was his heart because it causes shortness of breath "all the time." R. 37. He said that he had chest pain "on and off" and he needed to have his hernia repaired again, but he had not scheduled that yet. R. 34.

Beecher stated that he could stand for 15 minutes, walk 2 blocks, and because of his hernia, could lift at most 8 pounds. He said that he had problems sitting too long

3

because his circulation "gets cut off," causing numbness in his legs, and he has problems kneeling and bending. He stated that he gets out of breath going up and down stairs, and any type of exertion causes him to lose his breath. He also said that he would have to take a rest break every 30 minutes, he often lies down for a couple of hours during the day, and he would be absent from work 3 days per week because he would be too tired to get up. R. 29–32.

The ALJ noted that Beecher had problems with his weight, shortness of breath, blood pressure, and a hernia. The ALJ believed that some of these problems might be alleviated if he lost weight. R. 35. Beecher testified that his doctor had said that his heart problems and high blood pressure were unrelated to his weight. R. 37. Beecher said that he was put on a weight loss program; he had lost "about 40 pounds," and he was still on the program. R. 35–36. Beecher's attorney noted that Beecher had heart valve problems, left ventricular dysfunction, and left atrial dilation, which was first observed in 2009. R. 38. However, counsel noted that Beecher's left ventricular ejection fraction was normal. R. 38. (A February 21, 2012 report of a myocardial perfusion SPEC indicated that Beecher's left ventricular ejection fraction was 55%, R. 710, which is within normal limits.) Beecher's attorney asked the ALJ to consider the echocardiogram report from September 2011 found at Exhibit 5F; the ALJ indicated in her decision that she had reviewed the report as well as an echocardiogram report from January 2012, which was addressed in her decision. *See* R. 15–16.

The VE testified that Beecher's past work as an apartment maintenance repairer would be classified as skilled work at the medium exertional level.

The ALJ asked the VE to assume a person who can do light work, but can't stand and walk for more than 45 minutes at a time, and needs a sit/stand option every 45 minutes. The VE testified that such a person could not do Beecher's past work but there were other unskilled, light jobs in the economy that such a person could perform within those restrictions. R. 38–40. These included small parts assembler, mail clerk, and inspector and hand packager. The VE also testified that a person with all the restrictions claimed by Beecher could not perform any jobs.

## II. DISCUSSION

### A. Legal Standards

The Social Security Act (the "Act") provides for the payment of benefits to persons who have contributed to the program and suffer from a physical or mental disability (DIB). The Act also provides for the payment of benefits to indigent persons under the Supplemental Security Income (SSI) program. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). "Disability" is defined by the Act as the "inability to engage in any substantial gainful activity [because] of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last … not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

A five-step sequential evaluation is used to determine whether a person is disabled under the Act. *See Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); 20 C.F.R. §§ 404.1520(a)(4) (DIB), 416.920(a)(4) (SSI). At step one, the ALJ considers a person's work activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ considers the severity and duration of the person's impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the person's impairments meet or medically equal the requirements of any impairment listed in the regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(d), 416.920(d). If the person does not have such an impairment, then the ALJ assesses the person's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). An RFC "is the most [a person] can still do despite [his] limitations" and must be based on all the relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At step four, the ALJ uses the RFC to determine if the person can do past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). At step five, the ALJ determines whether, given the person's RFC, age, education, and work experience, he can make an adjustment to other work in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). The person seeking benefits has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Because the Appeals Council denied the request for review, the ALJ's decision became the Commissioner's final decision. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). The Court's "review is 'extremely limited.'" *Stepp v. Colvin*, --- F.3d ----, No. 2015

WL 4591886, at *6 (7th Cir. July 31, 2015) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). The Court will uphold the decision as long as it applies the correct legal standards and is supported by "substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stepp*, 2015 WL 4591886, at *6 (quoting *Elder*, 529 F.3d at 413). An ALJ need not specifically address every piece of evidence, *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008), but "must adequately discuss the issues" and "build an accurate and logical bridge from the evidence to [her] conclusion." *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015) (internal quotation marks and citation omitted).

### B. Application to this Case

Beecher contends that the ALJ erred in denying his application for benefits in several ways. First, he argues that the ALJ erred by ignoring or rejecting all of the evidence that proved he was disabled and substituted her erroneous opinions for those of his treating and examining physicians. This is essentially a challenge to the ALJ's ultimate conclusion that Beecher was not under a disability as defined under the Act. Yet the ALJ discussed the evidence and reached her conclusions based on the evidence of record. Although an ALJ may not ignore entire lines of evidence, *see Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012), the ALJ did not commit that error here. With one exception for alleged dizziness, the ALJ mentioned all of Beecher's impairments, including his chronic renal failure and shortness of breath, which Beecher attributed to his heart

7

problems. The ALJ accommodated Beecher's heart problems by limiting him to light work. *See* R. 16. As noted, an ALJ need not mention every particular piece of evidence in the record. *Craft*, 539 F.3d at 673.

As for his dizziness, Beecher testified at the hearing that he gets dizzy if he bends over and at times has fallen down when bending over. R. 31. Yet Beecher had not previously alleged disability due to dizziness. Nor has he shown that his dizziness would further limit his RFC beyond that which the ALJ found. The physical residual capacity assessment for Beecher completed by Fernando Montoya, M.D., did not impose any postural limitations such as stooping or kneeling. *See* R. 192–93. Furthermore, at his consultative exam on June 25, 2011, Beecher complained of dizziness after standing for long periods of time. R. 188. However, he reported that he could stand for 60 minutes. *Id.* The ALJ's RFC which limits Beecher to standing for no more than 45 minutes at a time accounts for his dizziness due to long periods of standing.

Beecher argues that the ALJ failed to consider the disabling effect of his impairments in combination. But the ALJ expressly found that Beecher did not have an impairment or "combination of impairments" that met or equaled a listed impairment (R. 13), and she took into account Beecher's non-severe impairments by limiting him to work at the light exertional level, whereas the state agency medical consultant who reviewed the record opined that Beecher was capable of work at the medium exertional level. And that conclusion was affirmed by a second agency consultant. More specifically, Beecher maintains that the ALJ never considered the effect of his morbid

8

obesity when combined with his other impairments. However, the ALJ's decision indicates that she did consider the effects of his obesity on his RFC. R. 14. A plaintiff cannot merely allege insufficient evaluation of obesity without indicating how his obesity effected his ability to work beyond the RFC found by the ALJ. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

Furthermore, the state agency consultant reviewing the record took Beecher's morbid obesity into account. R. 188–90 (noting that Beecher "obviously" has "morbid obesity" and has "no limitation in physical activity except due to his [being] overweight resulting in shortness of breath with minimal exertion"). Likewise, Dr. Montoya, who completed a physical residual capacity assessment, took Beecher's morbid obesity into consideration when determining that he was capable of work at the medium level of exertion. *See* R. 192 (stating that Beecher was morbidly obese but "otherwise in good health"). Significantly, the ALJ found Beecher even more limited than Dr. Montoya did, restricting Beecher to work at a light exertional level, thus accounting for the effects of his obesity when combined with his other impairments.

Next, Beecher contends that the ALJ gave only perfunctory consideration to his impairments. While "an ALJ must discuss [a] listing by name and offer more than perfunctory analysis of the listing" when considering whether a condition meets or equals a listed impairment, *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004)), Beecher fails to point to any evidence in the record that could show that he met or equaled any particular listing. This

9

distinguishes cases in which the Seventh Circuit has determined that a perfunctory listing analysis warranted a remand. *See, e.g.*, *Minnick*, 775 F.3d at 935–36 (holding ALJ's cursory analysis of a listing was insufficient where ALJ did not "acknowledge several aspects of the record that could in fact meet or equal [the] Listing"); *Kastner v. Astrue,* 697 F.3d 642, 647–48 (7th Cir. 2012) (ALJ's cursory listing analysis failed to provide reasoning for denying benefits where record contained evidence that claimant satisfied the listing). In further contrast with *Minnick,* where the ALJ did not seek an expert opinion on whether the evidence supported a finding of equivalency, 775 F.3d at 936, here the ALJ had the Disability Determination and Transmittal forms completed by the state agency physicians in which they concluded that Beecher was not disabled. *See* R. 44, 45. The ALJ may rely on the opinions in such forms to satisfy the obligation to consider an expert opinion on medical equivalence. *See, e.g.*, *Barnett*, 381 F.3d at 670-71; *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). Therefore, contrary to Beecher's argument, the ALJ was not required to obtain the testimony of a medical advisor on the issue of whether Beecher's impairments or combination of impairments met or equaled a listed impairment.

Beecher specifically refers to Listing 6.02 relating to impairment of renal function. The ALJ addressed the listing in her decision, noting that it required not only persistent elevation of creatinine levels but also renal osteodystrophy, persistent motor or sensory neuropathy, or persistent fluid overload syndrome. R. 14. The ALJ found that the medical evidence did not meet that level of severity, and Beecher has not identified any

particular evidence in the record that suggests that his renal impairment was of sufficient severity.

An ALJ may assume that "a claimant represented by counsel … made his best case" for benefits. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Beecher was represented by counsel at the hearing before the ALJ in 2012, which occurred after the state agency medical consultants opined that Beecher was not disabled. But Beecher did not offer an opinion on medical equivalence from any of his treating physicians. And even though Beecher offers medical treatment evidence from 2012 post-dating the state agency consultants' opinions, he has not identified anything in that evidence that suggests their opinions were erroneous. Nor does it appear that Beecher asked the ALJ to re-contact the state agency consultants for new opinions based on the 2012 evidence. As Beecher acknowledges, "an ALJ is required to obtain an updated opinion of a medical expert "[w]hen additional medical evidence is received that *in the opinion of the administrative law judge …* may change the State agency medical …consultant's finding [as to medical equivalence]." *Titles II & XVI: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council*, SSR 96-6P (S.S.A. July 2, 1996) (emphasis added). Thus, the ALJ has discretion in determining whether to obtain an updated opinion. Beecher has not identified any particular 2012 medical evidence that he believes may have changed the consultants' opinions. So the ALJ did not abuse her

discretion by declining to seek an updated opinion.  The ALJ reasonably relied on the state agency consultants' opinions on medical equivalence.

Beecher argues that the ALJ overlooked evidence that his chronic renal failure has persisted from at least 2001 to the present and he has only one functioning kidney.  The ALJ reasoned that Beecher's "treatment records do no show that he had renal failure that persisted, or was expected to persist, at a severe level for a continuous 12-month period." R. 13.  While Beecher emphasizes the durational requirement, which is required under the Act, he fails to acknowledge the other aspect of the ALJ's finding—that his renal failure was not at a "severe level."  The regulations provide that "[a]n impairment … is not severe if it does not significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  The record supports this conclusion: Dr. Montoya determined that there were "[n]o apparent functional limitations resulting from [Beecher's] renal impairment." R. 192.  The fact that Beecher has had chronic renal failure for years by itself is not enough to establish a severe impairment.

Besides, it seems that Beecher is challenging the ALJ's consideration of his impairments at step 2 and her conclusion that some of his impairments (such as sleep apnea, lymphoma, and chronic renal failure) were not severe.  Consideration of the severity of one's impairments at step 2 is a threshold consideration; "an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even one severe impairment." *Curvin*, 778 F.3d at 649 (quoting *Arnett v. Astrue,* 676 F.3d 586,

12

591 (7th Cir. 2012)). Here, the ALJ did find that Beecher had some severe impairments, and continued with the sequential analysis, considering all of his impairments, whether severe or non-severe. Thus, any error at step 2 would have been harmless. *See id.* at 649–50.

      Finally, Beecher argues that substantial evidence fails to support the ALJ's step 5 determination that he was capable of performing jobs that exist in significant numbers in the national economy. Although the Commissioner's brief mistakenly states that the ALJ found Beecher could perform a limited range of sedentary work, the Court reviews the ALJ's decision; not the Commissioner's brief. The ALJ's determination that Beecher could perform a significant number of jobs (at the light exertional level allowing him to alternate between siting and standing every 45 minutes) in the national economy is supported by the VE's testimony, which was based on the ALJ's hypothetical to the VE accounting for the limitations the ALJ found supported by the record. *See, e.g.*, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619–21 (7th Cir. 2010) (explaining that where the ALJ's hypothetical "orient[s] the VE to the totality of a claimant's limitations," the VE's testimony "constitutes substantial evidence of the jobs [the] claimant can do"); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) ("When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record."). Therefore, the ALJ's step 5 determination was based on substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

### Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). The district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection may result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).

**The parties should not expect extensions of time to file either objections or responses. No replies will be permitted.**


Date: 08/07/2015

_Denise LaRue_
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Counsel of record